**Robert V. RINALDI, on behalf of Sherrock Brothers, Inc., Petitioner**

**v.**

**BOARD OF VEHICLE MANUFACTURERS, Dealers and Salespersons, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 2003.

Decided Jan. 8, 2004.

Publication Ordered March 9, 2004.

John B. Consevage, Harrisburg, for petitioner.

Robert D. Cultice, Boston, MA, for intervenor, Daimler Chrysler Motors Co.

BEFORE: FRIEDMAN, J., SIMPSON, J., and FLAHERTY, Senior Judge.

OPINION BY Judge SIMPSON.

Robert V. Rinaldi (Rinaldi), on behalf of Sherrock Brothers, Inc. (Dealership), of which he is sole shareholder, petitions for review of the Board of Vehicle Manufacturers, Dealers, and Salespersons' (Board) decision that DaimlerChrysler Motors Co., LLC (DCM) did not violate the Board of Vehicles Act (Act).[1] Because we agree Dealership voluntarily surrendered its franchise, we affirm.

Rinaldi purchased all the voting shares of Dealership from its former owners, Theodore and Edward Sherrock, in January 2002. Board Findings of Fact (F.F.) No. 7. However, because of disputes between Rinaldi and DCM arising from Rinaldi's other dealerships, a restriction existed on Rinaldi's management of additional dealerships. Therefore, Theodore Sherrock remained President and Dealer Principal, and Edward Sherrock remained Secretary/Treasurer, at all relevant times. F.F. No. 6, 8. Rinaldi's counsel informed DCM of Dealership's sale and the Sherrocks' continued positions as corporate officers by letter. Reproduced Record (R.R.) at 24a.

In November 2002, allegedly without any vote, meeting, or notice to Rinaldi, the Sherrocks sent a letter to DCM stating they were voluntarily terminating their Dealer Agreement with DCM.[2] F.F. No.

---

[1]. Act of December 22, 1983, P.L. 306, *as amended,* 63 P.S. §§ 818.1–818.37.

[2]. The letter said, "Please take notice that the undersigned elects to terminate and does hereby irrevocably terminate in accordance with the terms thereof, effective thirty (30) days after delivery hereof to you, any and all agreements that the undersigned has at any time entered into with you, relating to the purchase and sale of *Dodge* motor vehicles, if and to the extent now in effect, including without prejudice to the generality thereof, (a) certain *Dodge* Dealer Agreement currently in effect between you and the undersigned." R.R. at 26a (emphasis in original).

8; R.R. at 26a. This letter was signed by Theodore Sherrock as President and Edward Sherrock as Secretary/Treasurer of Dealership. *Id.* In response, DCM sent a letter to the Board noting Dealership, "terminates and is no longer an Authorized Dealer" for DCM. F.F. No. 9; R.R. at 28a.

Rinaldi filed a timely protest with the Board, asserting the Sherrocks' letter was, "*ultra vires,* unauthorized, ineffective, unlawful and legally void *ab initio.*" R.R. at 5a. Rinaldi further asserted DCM's notice of dealership termination was "legally ineffective, improper, unlawful and in violation of Section 13" of the Act.[3] R.R. at 6a.

DCM filed for summary relief, asserting Rinaldi's protest failed to state any claim upon which relief could be granted under Section 13. The Board granted DCM's motion, concluding Dealership's voluntary franchise termination made Section 13 inapplicable. The Board noted,

> To the extent that the actions of Dealership's officers might have been in violation of corporate law in voluntarily surrendering its franchise with Respondent without [Rinaldi's] knowledge or agreement, the Board has neither the authority [footnote omitted] nor the expertise

to address such claims. Any remedy Protestant may have against these officers is to be found in the courts, and not before the Board.

Board Op. at 6.

■ This appeal by Rinaldi followed.[4] Rinaldi asserts the Board erred in concluding he failed to state a claim under Section 13, because he offered to prove the franchise surrender was unauthorized and illegal.

The Board based its decision on two statutory sections: 1) Section 13, which the Board noted is "predicated upon an adversarial notice of termination and appeal"; and 2) Section 4, which grants the Board authority to investigate complaints of violations of the Act.[5]

Section 13 prohibits manufacturers from unfairly terminating their dealers' franchises. Under the Board's interpretation, to which we give great deference, "[S]ection 13 is predicated upon an adversarial notice of termination and appeal, [and] it addresses only an involuntary franchise termination by a distributor or manufacturer; section 13 does not bar the voluntary surrender of Dealership's franchise with Respondent." Board Op. at 6. The

---

**3.** Section 13 of the Act states, "It shall be a violation of this act for any manufacturer or distributor ... to unfairly, without due regard to the equities of said dealer and without just cause, terminate or fail to renew the franchise of any vehicle dealer...." 63 P.S. § 818.13.

**4.** We must affirm the Board's adjudication unless we determine Rinaldi's constitutional rights were violated, the adjudication was not in accord with the law, or necessary findings of fact are not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Maggiano v. State Bd. of Vehicle, Mfrs. Dealers, and Salespersons,* 659 A.2d 1071 (Pa.Cmwlth.1995) quoting, *Naglich v. State Bd. of Vehicle Mfrs., Dealers and Salesmen,* 86 Pa.Cmwlth. 478, 485 A.2d 851 (1984). Further, we are re-

quired to give "due deference" and "great weight" to the Board's application of the statute it is charged with enforcing and may not disregard or overturn its interpretation without "cogent reasons" and a decision determining the Board was "clearly erroneous." *Alpha Auto Sales, Inc. v. State Bd. of Vehicle Mfrs., Dealers and Salespersons,* 537 Pa. 353, 644 A.2d 153 (1994).

**5.** Section 4(a) states, "The board shall have the power and its duty shall be to: (1) Provide for and regulate the licensing of salespersons, dealers.... (3) Investigate ... any allegations of the wrongful act or acts of any licensee or person required to be licensed hereunder.... (4) Administer and enforce this act...." 63 P.S. § 818.4(a).

Board found Dealership voluntarily surrendered its franchise, and DCM accepted that surrender, making Section 13 inapplicable. *Id.* at 5.

■ We cannot say the Board's interpretation was clearly erroneous. Section 13 applies only when the manufacturer terminates a franchise "unfairly, without due regard to the equities of said dealer and without just cause."

■ Further, the record supports the Board's finding of voluntary franchise surrender. Rinaldi admits the Sherrocks were officers of the Dealership at the time they sent the termination letter.

Under corporation and agency law, DCM could conclude the officers' letter constituted a voluntary termination of the Dealer Agreement. DCM's acceptance was not an unfair action taken without due regard to Dealership's equities, because DCM was entitled to rely upon the representations made by Dealership's corporate officers.

■ Principals are subject to liability for acts done by their agents that usually accompany transactions the agents are authorized to conduct, if the other party reasonably believes the agent is authorized to perform the acts and does not have notice that the acts are unauthorized. Restatement (Second) of Agency § 161 (1958); *Wood Co. v. McCutcheon*, 136 Pa.Super. 446, 7 A.2d 564 (1939) ("A person who knows that the officer or agent of the corporation habitually transacts certain kinds of business for such corporation ... assumes, as he has the right to assume, that such agent or officer is acting within the scope of his authority." (citations omitted)). Moreover, corporations, "are necessarily required to conduct their business through agents and they are bound by the acts of their representatives within the apparent scope of the business with which they are entrusted." *Pollock Indus., Inc. v. Gen. Steel Castings Corp.*, 203 Pa.Super. 453, 201 A.2d 606 (1964).

Rinaldi offered to prove DCM knew of his equity interest in the Dealership. However, the record reveals limitations on Rinaldi's ability to act for the Dealership. Significantly, Rinaldi did not offer to prove DCM knew of limitations on the authority of Dealership officers. Because DCM knew of limitations on Rinaldi's authority but did not know of limitations on the authority of Dealership officers, there is nothing in the record to preclude summary relief founded on apparent authority.

Thus, the Board committed no error in declining to hold a hearing on the internal corporate dispute about the Sherrocks' authority to send the termination letter. *University Lincoln Mercury, Inc. v. Pennsylvania Bd. of Vehicle Mfrs., Dealers and Salespersons*, 133 Pa.Cmwlth. 8, 576 A.2d 1146 (1990). Once it determined DCM did not violate Section 13, the only section relied upon by Rinaldi in his protest, the Board had no further dispute before it within its jurisdiction under Section 4. The Board correctly noted Rinaldi's remedies are not regulatory in nature. Rinaldi's recourse is in court under agency and corporation law.

The record supports the Board's determination that DCM acted on the apparent authority of Dealership's corporate officers to amicably terminate the franchise. The Board's interpretation that Section 13 applies only to adversarial termination was not clearly erroneous. Accordingly, we affirm.

### ORDER

AND NOW, this 8th day of January, 2004, the order of the Board of Vehicle

Manufacturers, Dealers and Salespersons is affirmed.